TERRITORY EX REL. BOARD OF COMMISSIONERS OF CUSTER CO., respondent; *v.* BOARD OF COMMISSIONERS OF YELLOWSTONE CO., appellant.

EXPENSES OF TERMS OF COURT — *Apportionment of between counties — Mandamus lies to enforce payment.*— Under the general statute concerning cases where one county is attached to another for judicial purposes, and providing how and in what manner the public expenses of terms of court for such county shall be paid, the findings of the judge apportioning such expenses are final, and cannot be collaterally attacked. After the judge has made inquiry and found what part of the expenses of a term of court should be paid by the county attached to another for judicial purposes, and made an order directing reimbursement to the county incurring such expenses by the county so attached, it becomes the duty of the board of commissioners of the attached county to draw their warrant on the treasurer of their county, out of the general fund, payable to the commissioners of the county incurring such expenses, and forward the same to the treasurer of the county. Such duty is absolute, and especially enjoined by law, and performance thereof may be enforced by *mandamus.*

*Appeal from First District, Gallatin County.*

THE opinion states the facts.

E. W. & J. K. TOOLE, WILLIAM WALLACE, Jr., and SANDERS, CULLEN & SANDERS, for the appellant.

STREVELLE & GARLOCK, for the respondent.

WADE, C. J. This is an application for a writ of mandate, in which the relator substantially sets forth: That a large part of the territory and area embraced in the present

county of Yellowstone was, previous to the organization of Yellowstone county, a part of Custer county; that Yellowstone county was created and organized under the provisions of an act of the legislative assembly of the territory, approved on the 26th day of February, 1883; that by the provisions of said act the county of Yellowstone was attached to the county of Custer for judicial purposes, and the officers of Custer county were to act as officers of Yellowstone, except as otherwise provided by said act, until the 1st day of May, 1883; that while Yellowstone county remained so attached to the county of Custer for judicial purposes, there was, on the 10th day of April, 1883, at Miles City, the county seat of Custer county, begun and holden a term of the district court of the third judicial district in and for said county of Custer and the county of Yellowstone, which said term of court was duly appointed to be held at the time and place aforesaid; that at the term of said court there were brought, and were pending, and then and there tried, and otherwise disposed of by said court, a large number of causes from the county of Yellowstone, on account of which was incurred a large part of the public expenses of said term, which expenses were incurred for and on account of and are chargeable to the county of Yellowstone, while the same was so attached to Custer county; that at the close of said term of court, the judge thereof made inquiry as to what share of the public expense of said term was incurred for and on account of said Yellowstone county, and properly chargeable thereto; that upon said inquiry, said judge did find that the expenses of said term in certain cases, which are named and set forth in said application, were incurred for and on account of the said county of Yellowstone; that thereupon, the said court and the judge thereof did rule that the board of county commissioners of Yellowstone county reimburse the county of Custer all charges, costs and public expenses incurred at said term of court in all the cases so named in said application; that the said court and judge thereof did further order that the

said board of commissioners of said Yellowstone county, draw their warrant on the treasurer of their said county against the general fund thereof, payable to the county commissioners of the county of Custer, for said expenses, and forward the same to the treasurer of Custer county; and did further order that the clerk of said court should, as soon as practicable, furnish the board of commissioners of each of said counties a statement of the items of said expenses incurred in said causes, a copy of which order and itemized statement are attached to and form a part of said application; that the amount of said expenses is $5,812.20; that the commissioners of Yellowstone county refuse to draw a warrant therefor in pursuance of said order; that the county of Custer has no speedy or adequate remedy at law; whereupon the relator prays for a writ of *mandamus*.

There was a demurrer to the application overruled, and an alternative writ of mandate issued, and an answer, in which the appellant alleged, in substance, that it is a municipal corporation existing by and under the provisions of an act of the legislative assembly of Montana, entitled "An act to create the county of Yellowstone, and for the election of officers thereof, approved February 26, 1883;" that relator ought not to have the relief in the writ required and demanded, because all the services mentioned and set forth in said application are for services rendered in prosecuting the sundry persons therein named for offenses committed in Custer county, and not otherwise. And then follows an allegation as to each case named in the application showing that the crime for which the defendant was tried was committed in the county of Custer prior to the passage of the act creating the county of Yellowstone. But there is no denial of the allegation of the application that the cases named therein belonged to the county of Yellowstone, after the same had been created by the act aforesaid; nor that the judge of said court, at the close of said term, made an inquiry as to what share of the public expenses of said term of court were incurred for and were properly charge-

able to Yellowstone county; and no denial that the judge found upon said inquiry that the expenses incurred in the cases named in the application and answer were properly chargeable to Yellowstone county. The answer alleges that certain of the items in said account, which are set forth, are extortionate and illegal, and that the amounts allowed to sundry witnesses for mileage were in excess of the number of miles traveled by said witnesses, and are illegal. There was a demurrer to the answer sustained, and the appellant abiding its answer, a peremptory writ was issued.

The statute under which this proceeding is had provides that whenever a term of the district court shall be held in any county in this territory, and another county is attached to such county for judicial purposes, at the close of each term, it shall be the duty of the justice presiding at such term to make an inquiry as to what share of the public expense of such term was incurred for and on account of the county or counties so attached, or litigants therefrom, and to apportion the same, and to make an order directing the reimbursement to the county incurring such expense, by the county so attached; and it shall be the duty of the board of county commissioners of the attached county to draw their warrants on the treasurer of their county, out of their general fund, payable to the county commissioners of the county incurring said expense, and to forward the same to the treasurer of the county, who shall make report thereof to the board of county commissioners of his county, as soon as the same shall be received; and the said warrants shall be paid in due course as is provided by law; and the said district court is authorized to make any and all necessary orders for carrying this section into effect as equality and justice may require. R. S. 537, sec. 603.

The statute further provides that the writ of *mandamus* may be issued by any court in this territory, except a justice's, probate, or mayor's court, to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins as a duty resulting

from an office, trust, or station, in all cases where there is not a speedy, plain and adequate remedy in the ordinary course of the law. Code Civ. Proc. secs. 547–549. There is nothing contained in the answer that tends to impeach or in any manner to invalidate the finding of the judge, who made inquiry, in pursuance of the statute, concerning what part of the public expenses of said term of court were properly chargeable to Yellowstone county. In such inquiry the judge acts for both counties, and there is nothing in the answer to show but that both counties were represented at such hearing and inquiry. There was no objection to the findings and no appeal from the order. This inquiry was a hearing in pursuance of law, and the findings resulting therefrom are final for the purposes of this proceeding. They cannot be attacked collaterally. Upon such inquiry it was found by the judge that the expenses of said term of court, in the cases named in the application of relator, were incurred for and on account of Yellowstone county. That is equivalent to a finding that the cases named originated in and belonged to Yellowstone county, and were tried at the court in Custer county, while the former was attached to the latter county for judicial purposes. It is only in such cases that the judge makes inquiry concerning expenses.

The allegations of the answer, that these crimes were committed in Custer county, which by the dates alleged were prior to the organization of Yellowstone county out of the territory of Custer county, is no denial that these cases were properly tried as belonging to Yellowstone county. These allegations are simply to the effect that these crimes were committed before the county of Yellowstone was created, and are an admission that they were committed within the territory which forms that county. If it had denied or questioned that these cases belonged to Yellowstone county, then that county ought to have appeared before the judge and presented its objections to being charged with said expenses. There seems to be

no question but that these cases properly belonged to Yellowstone county, and that the defendants named were properly indicted and tried as of that county, attached to Custer for judicial purposes, and no good reason, or even excuse, is shown why Yellowstone county did not pay the lawful expenses consequent upon said trials, as required to do by the law and order of the judge.

The legislature had authority to create Yellowstone county out of the territory of Custer county, and to attach it to Custer for judicial purposes; and when this had been done, the general statute concerning cases where one county is attached to another for judicial purposes applies and determines how and in what manner the public expenses of terms of court for such counties shall be paid. After the judge has made inquiry, and found what part of the expenses of a term of court should be paid by the county attached to another for judicial purposes, and made an order directing reimbursement to the county incurring such expenses by the county so attached, then it becomes the duty of the board of commissioners of the attached county to draw their warrant on the treasurer of their county out of the general fund, payable to the commissioners of the county incurring such expenses, and forward the same to the treasurer of the county.

After the judge has made the order directing reimbursement of the county incurring the expenses, the duty of the commissioners of the attached county to draw their warrant in payment of such expenses becomes imperative and absolute. It is a duty that the law especially enjoins. It is a duty resulting from their office as county commissioners. It is the office of the writ of mandate to compel the performance of such duties. Under the allegations of the application, which are not denied by the answer, it became the duty of the commissioners of Yellowstone county to draw their warrant in favor of Custer county for the payment of the expenses named. It was a duty specially enjoined by law. It was a duty directly resulting from their

office. They had no discretion in the premises. Like a clerk who has been ordered by the court to issue an execution upon a judgment, they had no right to question the propriety of the order. It is such plain, unquestionable official duties that the writ of mandate compels to be performed.

The statute provides that the court may make "any and all necessary orders" for carrying the section in question into effect. Proceeding in *mandamus* is one of the appropriate remedies for this purpose. It is immaterial whether such necessary orders are procured by proceedings in *mandamus* or by any other legal proceeding. Procuring the necessary order in a legal manner is the material thing, and *mandamus* is an appropriate remedy. The order directing the issuance of a peremptory writ of *mandamus* is affirmed.

*Judgment affirmed.*